**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
RIVERHEAD PARK CORP., STANLEY
BLUMENSTEIN and LAURENCE OXMAN,

               Plaintiffs,          **MEMORANDUM OF**
                                    **DECISION AND ORDER**
      -against-                  07-CV-4133 (ADS)(ARL)

PHILIP CARDINALE, individually, GEORGE
BARTUNEK, individually, BARBARA BLASS,
individually, LEROY E. BARNES, individually,
ROSE SANDERS, individually, and THE
TOWN OF RIVERHEAD,
                   Defendants.
--------------------------------------------------------X

**APPEARANCES:**

**Campanelli & Associates, P.C.**
*Attorneys for the Plaintiffs*
1757 Merrick Avenue
Suite 204
Merrick, NY 11566
   By:  Andrew J. Campanelli, Esq.
        David Antwork, Esq., Of Counsel

**Smith, Finkelstein, Lundberg, Isler & Yakaboski, LLP**
*Attorneys for the Defendants*
456 Griffing Avenue, P.O. Box 389
Riverhead, NY 11901
   By:  Frank A. Isler Esq.
        David P. Barker, Esq., Of Counsel

**SPATT, District Judge.**

On October 3, 2007, the Plaintiffs Riverhead Park Corp. ("RPC"), Stanley Blumenstein

("Blumenstein") and Laurence Oxman ("Oxman," and collectively, "the Plaintiffs") commenced

this action by filing a Complaint against the Defendants Philip Cardinale ("Cardinale"), George

Bartunek ("Bartunek"), Barbara Blass ("Blass"), Leroy E. Barnes ("Barnes"), Dawn C. Thomas

("Thomas"), Rose Sanders ("Sanders") and the Town of Riverhead ("the Town") pursuant to 42

U.S.C. §§ 1983 and 1985.  The Plaintiffs alleged a conspiracy and violations of the Plaintiffs'

procedural due process rights, substantive due process rights and equal protection rights under

the Fifth and Fourteenth Amendments.

On October 10, 2011, Thomas moved for summary judgment pursuant to Federal Rule of

Civil Procedure ("Fed. R. Civ. P.") 56, dismissing the Complaint insofar as it asserts allegations

against her individually.  In addition, on November 21, 2011, the Plaintiffs cross-moved to

amend the Complaint to (1) withdraw their equal protection and conspiracy claims and (2) add

state law and § 1983 malicious prosecution claims.  In a Memorandum and Order dated July 26,

2012, the Court (1) granted Thomas's motion for summary judgment dismissing the Complaint

against her individually; (2) granted the Plaintiff's cross-motion to amend the Complaint with

respect to the withdrawal of the equal protection and conspiracy claims; and (3) denied the

Plaintiffs' cross-motion to amend the Complaint with respect to adding state law and § 1983

malicious prosecution claims.

Presently before the Court is a motion by the remaining Defendants Cardinale, Bartunek,

Blass, Barnes, Sanders and the Town ("the Defendants") for summary judgment dismissing the

Complaint pursuant to Fed. R. Civ. P. 56.  The Defendants contend that summary judgment

should be awarded in their favor because (1) the action is not ripe, as the Plaintiffs have failed to

exhaust available administrative remedies; (2) the Plaintiffs failed to state a claim; (3) the

defenses of absolute and qualified immunity apply in this case; and (4) the individual Plaintiffs

lack standing.  The Plaintiffs oppose this motion.

For the reasons that follow, the Court grants the Defendants' motion for summary

judgment dismissing the Complaint.

# I.  BACKGROUND

## A. The Parties

The Defendant Town is a municipal corporation located within Suffolk County in the State of New York.  (Compl., ¶ 23.)  At all times relevant to this action, Cardinale, Bartunek, Blass and Sanders were members of the Town Board, Barnes was the Town's Building Department Administrator and Thomas was the Town Attorney.  (Compl., ¶¶ 11, 13, 15, 17 and 19.)  The Plaintiff RPC is the former owner of a 13-acre parcel of undeveloped land ("the Parcel") located in the Town, on the south side of County Route 58.  Blumenstein and Oxman were both shareholders of RPC.  (Siegel Decl., Exh. D.)  Blumenstein was also the president of RPC.  (Siegel Decl., Exh. D.)  However, neither Blumenstein nor Oxman owned the Parcel in their individual capacity.  (Siegel Decl., Exh. D.)  It appears that Blumenstein is now deceased. (Oxman Aff., ¶ 1; Campanelli Decl., Exh. A.)

## B.  The Comprehensive Plan

From 1997 to 2003, the Town considered the adoption of a town-wide Comprehensive Plan, also known as "the Master Plan."  (Siegel Decl., Exh. E.)  This Plan recommended amending the Town Code to rezone most property within the Town.  (Siegel Decl., Exh. E.).  In this regard, the Comprehensive Plan recommended that the Parcel be rezoned to the Town's Business Center Zoning District, which permitted retail uses but not agricultural uses.  (Siegel Decl., Exh. E.)  At the time, the Parcel was located in the Town's Industrial A Zoning District, which prohibited retail uses but permitted agricultural uses.  (Siegel Decl., Exh. C.)  On November 3, 2003, by Riverhead Town Board Resolution #1175 of 2003 ("Resolution 1175"), the Town adopted the Comprehensive Plan.  (Siegel Decl., Exh. E.)

**C. RPC's Purchase of the Parcel and the Parties' Dispute**

Prior to RPC's purchase of the Parcel, the Plaintiffs submitted a "Conceptual Site Plan" for the Parcel, dated December 19, 2003 and drafted by land surveyor Joseph A. Ingegno. (Siegel Decl., Exh. J.) The Plaintiffs proposed building a retail building on the land. (Siegel Decl., Exh. J.) According to the Plaintiffs, they submitted the Conceptual Site Plan because the Town Planner had asked them to submit it, so as to explore the possible types of development the Town might approve in the future. (Oxman Aff., ¶ 16.) However, the Plaintiffs claim that they never intended to build what was depicted on the Conceptual Site Plan. (Oxman Aff., ¶ 91.)

On the Conceptual Site Plan, there was an area of the Parcel that was marked as "edge of wetlands as flagged by First Coastal Environmental on April 2003" ("the wetland area"). (Siegel Decl., Exh. J.) No building or construction was proposed on the wetland area. (Siegel Decl., Exh. J.) The Plaintiffs contend that the Town has never demonstrated that there were any wetlands on the Parcel. (Oxman Aff., ¶¶ 44–47.)

A few weeks later, on January 9, 2004, for the sum of $825,000, the Plaintiff RPC completed the purchase of the Parcel (Siegel Decl., Exh. C.) At the time of RPC's purchase, the Parcel was still located in the Town's Industrial A Zoning District, as it appears the Town had not enacted any resolutions to execute the Comprehensive Plan's zoning recommendations. (Siegel Decl., Exh. C.)

On or about May 28, 2004, in regard to the Parcel, Blumenstein, on behalf of RPC, submitted to the Town (1) an Application for Site Plan Approval; (2) a Preliminary Site Plan Checklist; and (3) a Full Environmental Assessment Form. (Siegel Decl., Exhs. G, H and I.) In RPC's Application for Site Plan Approval, Blumenstein represented that RPC intended to "build a commercial center in accordance with the new Master Plan." (Siegel Decl., Exh. G.)

4

Similarly, on the Full Environment Assessment Form, Blumenstein indicated that RPC planned to "develop commercial space on Route 58 in accordance with the Master Plan." (Siegel Decl., Exh. I.) In addition, on the Preliminary Site Plan Checklist, Blumenstein stated that RPC planned to build a "new construction" on the vacant land. (Siegel Decl., Exh. H.)

In or about June 2004, Oxman contacted Jeffrey Seeman ("Seeman") to examine the Parcel "for the 'absence' or 'presence' of wetlands, a typical investigatory look to determine if fresh water wetlands existed on the property." (Siegel Decl., Exh. M.) Seeman was the principal of Coastal Environmental Corporation, a company engaged in all facets of environmental consulting and recognized as qualified for jurisdictional wetland delineations and assessments by the State of New York and the State of New Jersey. (Siegel Decl., Exh. M.) In June 2004, Seeman examined the Parcel and discovered "an isolated fresh water wetland of approximately 100 foot in diameter," which "contained exposed groundwater, low bush blueberry plants and a variety of sedges and rushes typical of 'Kettle Hole' type wetlands found in pine barren/scrub oak forested habitats." (Siegel Decl., Exh. M.) Seeman further observed that the wetland area "had previously been 'flagged' since there were pink survey flags located all around the edges." (Siegel Decl., Exh. M.)

After conducting the field examination, Seeman contacted Oxman and Blumenstein by telephone and "advised them that wetlands were indeed present at the [Parcel] but that [he] did not do 'formal' jurisdictional wetland delineation." (Siegel Decl., Exh. M.) He also advised them he "generally agreed with the flagging of the wetland that had been previously done," that the "wetland would be regulated under Chapter 107 of the Riverhead Town Code and that the Town had the jurisdiction to regulate within 150 feet of the wetland boundary." (Siegel Decl., Exh. M.)

On September 8, 2004, the Town's Architectural Review Board conducted a preliminarily review of a site plan for the Parcel that was drafted by architect-planner Martin F. Sendlewski, AIA. (Siegel Decl., Exh. L.) Thereafter, on September 29, 2004, the Town's Architectural Review Board reviewed the site plan. (Siegel Decl., Exh. L.) The site plan proposed constructing "Riverhead Park Stores" on the Parcel. (Siegel Decl., Exh. L.) Again, the wetland area was marked as an "edge of wetlands as flagged by First Coastal Environmental on April 2003." (Siegel Decl., Exh. L.) The site plan also indicated that the wetland area was undisturbed. (Siegel Decl., Exh. L.)

However, at some point, the Plaintiffs began considering using the Parcel to "operate a farm stand, selling local produce in accommodating seasons, and then have pumpkin picking in the autumn, and sell Christmas trees in the winter." (Compl., ¶ 36.) The Plaintiffs wished to use the Parcel in this way in order to generate income for mortgage and tax payments while they looked for a buyer for the Parcel. (Oxman Aff., ¶¶ 18–24.)

Thus, on September 29, 2004, the Plaintiffs sent a letter to Bartunek requesting that agriculture be included as a permitted use in the Business Center Zoning District. (Compl. ¶ 45; Campanelli Decl., Exh. K.) Thereafter, Oxman "had a face-to-face meeting with [] Bartunek, Sanders, Blass and the Town Planner[] and [] advised them that [he] wanted to pursue agriculture uses for [the Parcel]." (Compl., ¶ 46; Oxman Aff., ¶¶ 54–55.) According to Oxman, at this meeting, he asked if his rights to farm would be grandfathered in if he engaged in agricultural use of the Parcel before the rezoning occurred. (Oxman Aff., ¶ 58.) He was told that they would be. (Oxman Aff., ¶ 58.)

Two days later, on or about October 1, 2004, the Plaintiffs began clearing the Parcel of trees and vegetation in order to prepare the Parcel for agricultural use, specifically the planting of

6

a cover crop.  (Compl. ¶ 70; Siegel Decl., Exhs. N, O, P and Q; Oxman Aff., ¶ 61.)  The

Plaintiffs did not have any permits to clear the land at the time.  (Siegel Decl., Exh. R.)  The

Plaintiffs also "set up a seasonal pumpkin patch by creating a decorative scene on the property,

which included the placement of an ornamental shed, adorned with hay bales in front."  (Oxman

Aff., ¶ 63.)  The Plaintiffs "intended to begin selling pumpkins" and "had already secured pricing

to purchase [the pumpkins] in bulk."  (Oxman Aff., ¶ 63.)   In addition, the Defendants allege

that the Plaintiffs also eliminated the wetland area by filling it with sand.  (Def. Mem., pg. 4;

Siegel Decl., Exh. N.)  However, the Plaintiffs assert that they never filled in any portion of the

Parcel, including the wetland area, nor did they backfill anything with sand or any other material.

(Oxman Aff., ¶ 6.)   They further maintain that they did not believe there were any wetlands on

the property, but even if there were wetlands, their agricultural use of the Parcel would have been

explicitly exempted from any restrictions pertaining to wetlands under the Town Code.  (Oxman

Aff., ¶¶ 44–48.)

On October 4, 2004, Barnes observed the clearing activity at the Parcel and directed the

Town to issue a stop work order ("SWO") to the Plaintiffs for their violations of the Town Code.

(Barnes Aff., ¶¶ 9 and 10.)  On October 4, 5 and 7, 2004, the Plaintiffs were served with SWOs,

citing (1) a violation of Town Code § 52-8.2, Land clearing Permits; (2) a violation of Town

Code § 108-73A, permits; and (3) violations of Chapter 52, 63, 107 and 108, for the clearing of

land without a permit.  (Siegel Decl., Exh. C.)  The October 4, 2004 SWO was signed by

Thomas, while the October 5 and 7, 2004 SWOs were signed by Barnes.  (Siegel Decl., Exh. C.)

The Plaintiffs never appealed from the issuance of the SWOs issued by the Town to the Town's

Zoning Board of Appeals.  (Barnes Aff., ¶ 13.)

At about this time, on October 5, 2004, the Town adopted Riverhead Town Board Resolution #939 of 2004 ("Resolution 939").  (Siegel Decl., Exh. C.)   Resolution 939 rezoned a considerable amount of land within the Town from Industrial A Zoning District to Business Center Zoning District, including the Parcel.  (Siegel Decl., Exh. C.)  The rezoning went into effect on October 12, 2004.  (Siegel Decl., Exh. C.)

The Town did not refer Resolution 939 to the Farmland Preservation Committee, as it generally does not refer such change of zone legislation or applications.  (Thomas Aff., ¶ 7; Blass Aff., ¶ 8.)  The Plaintiffs never requested that the Town refer this matter to the Farmland Preservation Committee, nor did the Plaintiffs commence any action to challenge the zoning change or to compel the Town to refer Resolution 939 to the Farmland Preservation Committee.  (Thomas Aff., ¶¶ 8 and 9; Blass Aff., ¶ 7.)

From October 26, 2004 to November 9, 2004, Town Code Inspector Richard Downs issued 51 complaints to the Plaintiffs in connection with their alleged illegal activity on the Parcel.  (Oxman Aff., ¶ 92; Campanelli Decl. Exhs. A and P.)  In this regard, the Plaintiffs "were charged with violating 51 counts of the Riverhead Town Code, Sections 52-6, 52-8.2, 63-3, 107-4(A)&(B), 107-6, 107-7(F) & (H), 107-8(A)(B)&(C), 108-46(A), 108-73(A), 108-74.1, 108-78, 108-129(B), 108-130(B)(3) and 108-130(B)(3)(b)."  (Campanelli Decl., Exh. A; see also Oxman Aff., ¶ 92 and Campanelli Decl., Exh. P.)  These charges included accusations that the Plaintiffs had cleared vegetation within 150 feet of a wetland without a permit and cleared trees without a land clearing permit.  (Oxman Aff., ¶ 92; Campanelli Decl, Exh. P.)

**D. The State Court Proceedings**

On October 22, 2004, the Town commenced an action, Town of Riverhead v. Riverhead Park Corp., Index No. 25539/2004, (N.Y. Sup. Ct.), against the Plaintiffs, which was assigned to

the Honorable Joseph Farnetti ("Justice Farnetti") in the Supreme Court of Suffolk County ("the State Action"). (Campanelli Decl., Exhs. B and M.) On that same date, the Town obtained a Temporary Restraining Order ("TRO") from the Honorable Elizabeth Hazlitt Emerson enjoining the Plaintiffs from any further clearing, filling or agricultural practices on the Parcel. (Campanelli Aff., Exh. M.) The TRO was modified on April 18, 2005 and thereafter remained in place until March 31, 2008, when the Town's motion for a preliminary injunction was denied by Justice Farnetti. (Campanelli Decl., Exh. B.) On October 5, 2010, Justice Farnetti granted the motion by the Plaintiffs for summary judgment dismissing the Town's complaint on the ground that the Town lacked capacity to sue without a Town Board resolution authorizing the suit, which had not occurred. (Campanelli Decl., Exh. C.)

In addition, the 51 complaints that had been brought against the Plaintiffs by the Town were ultimately withdrawn by the Defendants or dismissed by the Justice Court of the Town of Southampton. (Oxman Aff., ¶¶ 9 and 10; Campanelli Decl., Exh. A.) The last of these 51 complaints was dismissed by the Honorable Deborah E. Kooperstein of the Justice Court of the town of Southampton on April 1, 2012. (Oxman Aff., ¶ 10; Campanelli Decl., Exh. A.)

While these state proceedings were moving forward, on July 26, 2007, RPC refinanced the Parcel for five million dollars. (Oxman Dep. Tr.; Siegel Decl., Exh. S.) Thereafter, on August 13, 2009, the mortgagee of the Parcel obtained a judgment of foreclosure and sale of the Parcel in the New York State Supreme Court. (Suffolk County Index No. 2008-43263.) On October 27, 2009, RPC filed for bankruptcy protection in the United States Bankruptcy Court of the Eastern District of New York. (Bankr. EDNY Proceeding, Case No. 09-78152.) The Parcel was subsequently sold by the mortgagee pursuant to the bankruptcy proceedings on October 18, 2010.

## II. DISCUSSION

### A. Legal Standard on a Motion for Summary Judgment

It is well-settled that summary judgment under the provisions of Fed. R. Civ. P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" within the meaning of Fed. R. Civ. P. 56 when its resolution "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir.1995) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam), and Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir.1989)). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)). However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. Matsushita, 475 U.S. at 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538. Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support

of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223–24 (2d Cir. 1994) (citations omitted).

**B.  As to Whether the Plaintiffs' Due Process Claims are Ripe for Review**

Before reaching the merits of the Plaintiffs' claims, this Court must first consider the question of whether the Plaintiffs' claims are ripe for review, as ripeness is jurisdictional. Vandor, Inc. v. Militello, 301 F.3d 37, 38–39 (2d Cir. 2002) (per curiam) (citing Marchi v. Board of Cooperative Educ. Servs. of Albany, 173 F.3d 469, 478 (2d Cir. 1999)); see also Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005).  "Absent jurisdiction 'federal courts do not have the power to dismiss *with prejudice*."  Vandor, 301 F.3d at 38–39 (citing Hernandez v. Conriv Realty Ass'n, 182 F.3d 121, 122 (2d Cir. 1999)) (emphasis in original).

"The Supreme Court has developed specific ripeness requirements applicable to land use disputes."  Murphy, 402 F.3d at 347.  As the Second Circuit has explained:

> Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 87 L Ed. 2d 126, 105 S. Ct. 3108 (1985), sets forth a two-pronged test for assessing the ripeness of taking-type claims. The first prong requires the government entity charged with enforcing the regulations at issue to have rendered a "final decision."  Id. at 186.  The second prong requires the plaintiff to have sought compensation if the state provides a "reasonable, certain and adequate provision for obtaining compensation."  Id. at 194 (quoting Regional Rail Reorganization Act Cases, 419 U.S. 102, 124–25 (1974)).

Southview Assoc., Ltd. v. Bongartz, 980 F.2d 84, 95 (2d Cir. 1992) (citations omitted).

"[T]he ripeness requirement of Williamson County has [] been extended by the Second Circuit to equal protection and due process claims asserted in the context of various land use challenges."  Lewis v. Carrano, 844 F. Supp. 2d 325, 329 (E.D.N.Y. 2012) (citing, among others, Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88–89 (2d Cir. 2002), and Southview, 980 F.2d at 96–97); see also Murphy, 402 F.3d at 349–50 ("The Williamson

County ripeness test is a fact-sensitive inquiry that may, when circumstances warrant, be applicable to various types of land use challenges."). However, when a plaintiff, as here, brings a "substantive due process claim premised on arbitrary and capricious government conduct," the claim "is subject to only the final decision prong of the Williamson ripeness test." Southview, 980 F.2d at 96–97. Indeed, "[u]nless a court has a final decision before it, it cannot determine whether a claimant was deprived of property and whether the government conduct was arbitrary or capricious." Id. at 97. Similarly, a procedural due process claim is also only subject to the final decision prong. See, e.g., Roman Catholic Diocese of Rockville Ctr. v. Inc. Vill. of Old Westbury, 09 CV 5195 (DRH) (ETB), 2012 U.S. Dist. LEXIS 56694, at *19–20 (E.D.N.Y. Apr. 23, 2012) ("The first prong of the Williamson ripeness test has been applied to procedural and substantive due process claims as well as equal protection claims.").

"A 'final decision' is a 'definitive position on the issue that inflicts an actual, concrete injury.'" Country View Estates @ Ridge, LLC v. Town of Brookhaven, 452 F. Supp. 2d 142 (E.D.N.Y. 2006) (quoting Williamson County, 473 U.S. at 193). In assessing prong-one ripeness, the Second Circuit has emphasized "that requiring a claimant to obtain a final decision from a local land use authority aids in the development of a full record" and "evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution." Murphy, 402 F.3d at 348–49. However, the Second Circuit also noted that "the finality requirement is not mechanically applied," and "[a] property owner . . . will be excused from obtaining a final decision if pursuing an appeal to a zoning board of appeals . . . would be futile" or if "a zoning board of appeals . . . sits purely as a remedial body" and does not participate in the decision-making. Id. at 349.

In this case, the Plaintiffs bring two causes of action. First, the Plaintiffs allege that the Defendants violated their procedural due process rights by (1) failing to refer the proposal to re-zone the Parcel to Farmland Preservation Committee for review prior to enacting the re-zoning and (2) issuing the SWOs and the complaints, which prevented the Plaintiffs from being able to use their property. (Compl., ¶¶ 143–55.) Second, the Plaintiffs allege that the Defendants violated their substantive due process rights by issuing the SWOs and the complaints, which prevented the Plaintiffs from being able to use their property. (Compl., ¶¶ 156–63.) The Plaintiffs concede that they did not appeal from the issuance of the SWOs nor did they challenge the Town Board's failure to consult with the Farmland Preservation Committee by an Article 78 proceeding.

With respect to the Plaintiffs' challenge to the validity of the SWOs, the Court finds that these portions of their substantive and procedural due process claims are not ripe for review. In this regard, according to New York State Town Law § 267(2), a town that adopts a zoning law or ordinance is required to also appoint a zoning board of appeals. New York State Town Law § 267-a(4) further provides as follows:

> Unless otherwise provided by local law or ordinance, the jurisdiction of the board of appeals shall be appellate only and shall be limited to hearing and deciding appeals from and reviewing any order, requirement, decision, interpretation, or determination made by the administrative official charged with the enforcement of any ordinance or local law adopted pursuant to this article. Such appeal may be taken by any person aggrieved, or by an officer, department, board or bureau of the town.

"An appeal [must] be taken within sixty days after the filing of any order, requirement, decision, interpretation or determination of the administrative official, by filing with such administrative official and with the board of appeals a notice of appeal, specifying the grounds thereof and the relief sought." New York State Town Law § 267-a(5)(b). Importantly, an appeal "stay[s] all

proceedings in furtherance of the action appealed from, unless the administrative official . . . certifies to the board of appeals . . . that by reason of facts stated in the certificate a stay, would, in his or her opinion, cause imminent peril to life or property, in which case proceedings shall not be stayed[.]"  New York State Town Law § 267-a(6).

Riverhead Town Code § 108.75 codifies the New York State Town Law by directing the Town Board to appoint a Board of Appeals consisting of five members.  Under Riverhead Town Code § 108.74.1, "[t]he Building or Zoning Inspector, upon investigation of any violation of this chapter, shall have the authority hereby to post a stop order in a form approved by the Town Board."  However, Town Code § 108.76(A) empowers the Board of Appeals to "hear and decide appeals from and review any order, requirements, decision or determination made by the Zoning Officer."

Thus, in this case, the Plaintiffs have not satisfied the final-decision prong because they failed to appeal the SWOs to the Board of Appeals.  See Wiacek Farms, LLC v. City of Shelton, Civil No. 3:04cv1635 (JBA), 2005 U.S. Dist. LEXIS 25818, *13–17 (D. Conn. Oct. 28, 2005); Gottlieb v. Village of Irvington, 69 F. Supp. 2d 553, 557–559 (S.D.N.Y. 1999).   Indeed, the "Plaintiff[s] ha[ve] proffered no evidence that the challenged 'stop work' orders were not appealable.  Nor do[] [the] [P]laintiff[s] argue that appeal would have been futile, or merely supervisory rather than de novo."  Wiacek Farms, 2005 U.S. Dist LEXIS at *15.

Particularly instructive is the district court's decision in Wiacek Farms.  In that case, the plaintiff's complaint, in relevant part, asserted a substantive due process claim challenging the issuance of SWOs that allegedly "illegally interfered with [the plaintiff's] development of a 41-acre parcel[.]"   Id. at *1–2, 12–13, 15–16.   In this regard, "the essence of [the plaintiff's] due process claim [wa]s that [the] defendants delayed [its] construction project by . . . issuing the

14

'stop work' orders." Id. at *15–16.  According to the district court, "this type of challenge to local regulatory action only may be brought to federal court after a plaintiff has pursued available appeals or other remedies, and obtained a final decision."  Id. at *16.  However, the plaintiff did not appeal from the issuance of the SWOs to the zoning board of appeals, even though he had a right to do so under state law.  Id. at *13–14.  As such, the district court found that the plaintiff's "failure to obtain a final decision from the Zoning Board of Appeals [to be] dispositive of th[e] case."  Id. at *15.

Also instructive is the district court's decision in Gottlieb v. Village of Irvington, 69 F. Supp. 2d 553 (S.D.N.Y. 1999).  In Gottlieb, "the [defendant] Village issued two stop work orders covering Plaintiffs' premises," the second of which was the basis of the plaintiffs' action.  Id. at 554.  This "second work order was issued when the Village's engineer . . . called to the Village's attention the fact that the driveway location did not conform to the approved subdivision plat."  Id. at 555.  The Plaintiffs did appeal the second SWO to the Village's Zoning Board of Appeals, but never applied "to the Village Planning Board for approval of the sought change in the location of the driveway."  Id. 557.  Accordingly, the district court held that "[t]he Village has made no final decision to deny or to grant such an application because the Plaintiffs have never made one.  Thus, there is no final determination to challenge in this Court."  Id.

In this case, the crux of the Plaintiffs' substantive due process claim is that the Defendants interfered with their right to use their property and, in particular, their right to farm under the Town Code by issuing the three SWOs.  However, the Plaintiffs did not appeal from the issuance of the SWOs to the Board of Appeals, although they were permitted to do so under New York State Town Law and the Town Code.  As such, the Plaintiffs never obtained a final decision and cannot now challenge the SWOs through this § 1983 action.  In addition, while the

Plaintiffs assert that the SWOs prevented them from using the property for more than three years, as noted above, if the Plaintiffs had filed an appeal, the SWOs would have been stayed unless Barnes certified to the Board of Appeals that a stay would cause imminent peril to life or property.  New York State Town Law § 267-a(6).

Without a final determination, the Plaintiffs' challenge to the SWOs is unripe for review by this Court, and this Court must dismiss these portions of their due process claims.  Moreover, the Court dismissal is with prejudice, because the Plaintiffs allowed the time to appeal the SWOs lapse and therefore the Plaintiffs' challenge will never be ripe for review.  See Vandor, 301 F.3d at 39 ("A claimant cannot be permitted to let the time for seeking a state remedy pass without doing anything to obtain it and then proceed in federal court on the basis that no state remedies are open.  Thus, though the merits of [the Plaintiff's] takings claims (such as they are) are unripe, [the Plaintiff] does not say how they can ever ripen. . . we may therefore dismiss the claim with prejudice.") (citations omitted).

As to the Plaintiffs' procedural due process claim based on the Defendants' failure to refer the proposal to re-zone the Parcel to the Farmland Preservation Committee for review, this Court finds that the Defendants' contention that the Plaintiffs' claim is not ripe because they failed to initiate an Article 78 proceeding to be unavailing.   Under New York Civil Practice Law and Rules ("CPLR") § 7801, an Article 78 proceeding

> shall not be used to challenge a determination [ ] which is not final
> or can be adequately reviewed by appeal to a court or to some
> other body or officer or where the body or officer making the
> determination is expressly authorized by statute to rehear the
> matter upon the petitioner's application unless the determination to
> be reviewed was made upon a rehearing, or a rehearing has been
> denied, or the time within which the petitioner can procure a
> rehearing has elapsed[.]

Id.  As such, by suggesting that the Plaintiffs ought to have challenged the Town Board's failure to refer the proposed re-zoning of the Parcel to the Farmland Preservation Committee through an Article 78 proceeding, the Defendants have conceded that the Town Board's decision constituted a final decision.

Indeed, "the first prong of the Williamson [County] ripeness test which requires a plaintiff to obtain a 'final, definitive position' as to how it can use its property is not an exhaustion requirement."  Diocese of Rockville Ctr., 2012 U.S. Dist. LEXIS at *22 (quoting Clark v. Town of E. Hampton, 757 F. Supp. 2d 121, 122 (E.D.N.Y. 2010) (in turn, citing Williamson County, 473 U.S. at 192) (internal alterations omitted).  Accordingly, a plaintiff's "failure to commence an Article 78 proceeding to request review of," for example, a decision of a town board, "does not render its claims unripe for judicial review given that the administrative process, per se, had run its course."  Id. at *23.  Therefore, while the failure to initiate an Article 78 proceeding does have implications on the Plaintiffs' procedural due process claim , it cannot be said that the Plaintiff's procedural due process claim is unripe for review on this basis.

Finally, to the extent the Plaintiffs' procedural and substantive due process claims rely on the Defendants' issuance of the complaints to the Plaintiffs for alleged criminal violations, the Court finds that the claims are likewise ripe for review because the Plaintiffs' have satisfied the finality prong of the Williamson County ripeness test.  The 51 complaints have all been adjudicated in the state courts, where they were either being dismissed or withdrawn by the Defendants.  As such, their issuance can be reviewed by this Court.

## C.  As to Whether the Plaintiffs Have Demonstrated a Violation of Due Process

### 1.  Substantive Due Process

"Substantive due process protects against government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, but not against a government action that is 'incorrect or ill-advised.'"  Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995) (quoting Lowrance v. Achtyl, 20 F.3d 529, 538 (2d Cir. 1994)).  In this regard, "[s]ubstantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority."  Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999).

In order to allege a property interest sufficient to support a substantive due process claim, the plaintiff must allege that it had a valid property interest in the benefit in question.  See Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 17 (2d Cir. 1999); DLC Management Corp. v. Town of Hyde Park, 163 F.3d 124, 130 (2d Cir. 1998); Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996).  If the Court finds that the plaintiffs had an adequate property interest, then the plaintiffs still must allege that the defendants acted in an arbitrary or irrational manner in depriving the plaintiffs of that interest.  See Lisa's Party City, 185 F.3d at 17; Natale, 170 F.3d at 263.

Importantly, "the Second Circuit has instructed District Court judges not to become involved in local land use matters, even where a plaintiff asserts denial of federal due process[.]" Gottlieb, 69 F. Supp. 2d at 55 (citing Natale, 170 F.3d at 263).  Thus, when considering this issue, the federal court should be mindful not to become a zoning board of appeals and not to review nonconstitutional issues of land use determinations by local administrative agencies. See

Crowley, 76 F.3d at 52; Sullivan v. Town of Salem, 805 F.2d 81, 82 (2d Cir. 1986).  The Second

Circuit has offered the following guidance:

> In the zoning context, a government decision regulating a
> landowner's use of his property offends substantive due process if
> the government action is arbitrary or irrational.  Government
> regulation of a landowner's use of his property is deemed arbitrary
> or irrational, and thus violates his right to substantive due process,
> only when government acts with no legitimate reason for its
> decision.  In addition, our precedents caution that, although we will
> not countenance a constitutional violation, federal courts should
> not become fora for appellate review of nonconstitutional land use
> determinations.

Southview, 980 F.2d at 102–03 (citations and internal quotation marks omitted).

As discussed above, since the Court cannot consider the SWOs, because they are not ripe

for review, the only remaining basis for the Plaintiffs' substantive due process claim appears to

be the issuance of the 51 complaints.  As such, it appears that the Plaintiffs' substantive due

process claim is only based upon allegations that they were maliciously prosecuted by the

Defendants.  However, as this Court has already explained in its previous decision in this case,

the Plaintiffs cannot construe what is essentially a claim for malicious prosecution under the

Fourth Amendment as a claim for substantive due process under the Fourteenth Amendment.

Riverhead Park Corp. v. Cardinale, 881 F. Supp. 2d 376, 382–83 (E.D.N.Y. 2012) (Spatt, J.)

(denying as futile the Plaintiff's motion to amend to add malicious prosecution claims under due

process, because "the Plaintiffs make their § 1983 malicious prosecution claims through the

vehicle of Fifth and Fourteenth Amendment due process, and make no Fourth Amendment

allegations.").  Indeed, as a matter of law, "[a] claim for malicious prosecution, if brought under

the Constitution, must be brought under the Fourth Amendment rather than under the substantive

due process provisions of the Fourteenth Amendment[.]"  Clack v. Torre, Civil No. 3:10cv1905

(JBA), 2012 U.S. Dist. LEXIS 123729 (D. Conn. Aug. 30, 2012) (citing Diaz-Bernal v. Myers,

19

758 F. Supp. 2d 106, 133 (D. Conn. 2010) (in turn citing Albright v. Oliver, 510 U.S. 266, 271–75, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994), and Washington v. Cnty. of Rockland, 373 F.3d 310, 317 (2d Cir. 2004))) (internal alterations omitted).

The Plaintiffs failed to properly assert their allegations of malicious prosecution as a claim under the Fourth Amendment. They cannot now be permitted to bring such allegations under the guise of a Fourteenth Amendment substantive due process claim. Therefore, as there remains no basis for the Plaintiffs' substantive due process claim, summary judgment is granted in favor of the Defendants and the claim must be dismissed.

### 2. Procedural Due Process

As an initial matter, for similar reasons to those articulated above, the Plaintiffs cannot rely on Defendants' alleged wrongful issuance of the 51 complaints to "state a claim for the violation of [their] procedural due process rights," because (1) allegations of malicious prosecution "state a claim *only* under the Fourth Amendment, and not under the Due Process Clause of the Fourteenth Amendment" and (2) "New York allows [a] [p]laintiff to sue in tort for . . . malicious prosecution." Ambrose v. City of New York, Case No. 02-CV-10200 (KMK), 2009 U.S. Dist. LEXIS 27498, *51–52 n. 9 (S.D.N.Y. 2009). Indeed, this Court in its previous decision in this case denied Plaintiffs' motion to add malicious prosecution claims under its procedural due process claim, because "Fourteenth Amendment due process rights are insufficient to sustain a § 1983 malicious prosecution claim." Riverhead Park Corp., 881 F. Supp. 2d at 382.

Thus, the Court now considers whether the Plaintiffs' procedural due process claim can withstand the Defendants' summary judgment motion on the Plaintiffs' one remaining ground. In this regard, the Plaintiffs assert that the Defendants' failure to refer the proposal to re-zone the

Parcel to Farmland Preservation Committee for review prior to enacting the re-zoning prevented the Plaintiffs from being able to use their property without due process of law. However, the Defendants argue that (1) there is no requirement in the Town Code that the Town Board refer such matters to the Farmland Preservation Committee for review, and therefore, the Plaintiffs had no protected property interest and (2) the Plaintiffs should have commenced a mandamus proceeding pursuant to CPLR Article 78 to compel such a referral. (Def. Mem., pg. 8.)

"In order to establish a procedural due process violation, a plaintiff must prove that he or she was deprived of an *opportunity* granted at a meaningful time and in a meaningful manner for a hearing appropriate to the nature of the case." Brady v. Colchester, 863 F.2d 205, 211 (2d Cir. 1988) (citations and internal quotation marks and alterations omitted) (emphasis in original). However, where a plaintiff "was free to bring an Article 78 mandamus proceeding in New York State court" but did not, the plaintiff "cannot now be heard to complain of a denial of procedural due process." Nenninger v. Port Jefferson, No. 11-2743-cv, 2013 U.S. App. LEXIS 1949, at *5–6 n.2 (2d Cir. Jan. 29, 2013); see also Orange Lake Assocs. v. Kirkpatrick, 825 F. Supp. 1169, 1179 (S.D.N.Y. 1993) ("Since Plaintiff's claim in this case is procedural, an article 78 hearing was available in state court and there can be no procedural due process violation.").

Accordingly, the Court finds that it need not reach the question of whether the Plaintiffs had a protected property interest in having the re-zoning proposal reviewed by the Farmland Preservation Committee, because an Article 78 proceeding was available and would have afforded the Plaintiffs a meaningful post-deprivation remedy. However, the Plaintiffs never pursued an Article 78 proceeding. Therefore, as there is no factual dispute with respect to the Plaintiffs' failure to commence an Article 78 proceeding, the Court grants summary judgment in favor of the Defendants dismissing the Plaintiffs' procedural due process claim.

**D.  As to Whether the Defendants are Entitled to Immunity**

Although the Court has already found that summary judgment in favor of the Defendants is appropriate in this case and has dismissed the Complaint, the Court also notes that even if the Plaintiffs' claims could proceed forward, the Defendants Cardinale, Bartunek, Blass and Sanders would be entitled to absolute immunity.  In this regard, "[a]ny legislator being sued through [§] 1983 is absolutely immune from individual liability if the legislator's official conduct brought about the alleged constitutional violation. Such immunity extends to local legislators and local town zoning boards." Schwasnick v. Fields, 08-CV-4759(JS)(ARL), 2010 U.S. Dist. LEXIS 65958, at *22–23 (E.D.N.Y. June 30, 2010) (citations omitted).  Thus, since the Plaintiffs' are suing the Defendants Cardinale, Bartunek, Blass and Sanders for actions they made in connection with their positions as members of the Town Board, these Defendants have absolute immunity from suit.

As to the Defendant Barnes, the Court declines to determine the issue of whether he would have been entitled to qualified immunity.  Under the doctrine of qualified immunity, a defendant is entitled to immunity from suit where "(1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007) (citations omitted).  Therefore, in order to assess whether Barnes would have been entitled to qualified immunity in this case, the Court would be required to consider the merits of the SWOs that he issued.  However, since the SWOS are unripe for review, the Court makes no ruling on the issue of whether Barnes would be entitled to qualified immunity.

**E.  As to Whether the Individual Plaintiffs Have Standing**

Lastly, the Court notes that in any event, the individual Plaintiffs do not have standing. As an initial matter, a review of the docket reveals that one of the named individual Plaintiffs in this action, Blumenstein, is now deceased.  However, no formal written statement of fact of his death has been filed with the Court or served on the involved parties, and no motion for substitution has been filed in accordance with Fed. R. Civ. P. 25.

Moreover, the Plaintiffs here never owned title to the Parcel, but rather purchased the property through RPC and did not suffer any injury from the alleged due process violations, as only RPC filed for bankruptcy.  However, "[a] corporation's ability to bring suit under section 1983 eliminates the need for recognition of a right in shareholders to bring suit on the corporation's behalf."  Spinelli v. City of New York, 02 Civ. 8967 (RWS), 2010 U.S. Dist. LEXIS 116133, at *3 (S.D.N.Y. Nov. 1, 2010) (citation and internal quotation marks omitted). As a consequence, "'a shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation.'"  Id. (quoting Jones v. Niagara Frontier Transp. Auth., 836 F.2d 731, 736 (2d Cir. 1987)).

In this regard, the Second Circuit has held that even when a shareholder "may have felt personally aggrieved by" a defendant's actions against the plaintiff corporation and "may have faced the risk of financial loss as a result," the shareholder's individual claims must be dismissed for lack of standing.  Jones, 836 F.2d at 736.  See also Chabad Lubavitch of Litchfield County, Inc. v. Borough of Litchfield, 796 F. Supp. 2d 333, 339 (D. Conn. 2011) ("Federal courts have, similarly, not found individual standing for claims under Section 1983 that are indirectly caused by harm to a corporation and therefore are not distinct from those of the corporation.") (citations and internal quotation marks omitted).  Therefore, even if the Plaintiffs' claims had survived the

Defendants' motion for summary judgment, the individual Plaintiffs would not have had standing in this case.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that the Defendants' motion for summary judgment is granted as to all of the Plaintiffs' claims; and it is further

**ORDERED,** that the Plaintiffs' Complaint is dismissed with prejudice; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case.


**SO ORDERED.**

Dated: Central Islip, New York
      March 28, 2013

                        _____*/s/ Arthur D. Spatt*_____
                         ARTHUR D. SPATT
               United States District Judge